IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DARRELL WARREN, # M-27961,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 17-cv-917-NJR |
| ) | |
| **LOUIS SHICKER,** ) | |
| **DR. COE,** ) | |
| **PHIL MARTIN,** ) | |
| **RODERICK MATTICKS,** ) | |
| **WEXFORD HEALTH SERVICES,** ) | |
| **DR. GARCIA,** ) | |
| **and DR. RITZ,** ) | |
| ) | |
| **Defendants.** ) | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff, currently incarcerated at Illinois River Correctional Center ("IRCC"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. His claims arose while he was confined at Lawrence Correctional Center ("Lawrence"). Plaintiff claims that Defendants were deliberately indifferent to a serious medical condition. The Complaint is now before the Court for a preliminary review pursuant to 28 U.S.C. § 1915A.

Under § 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact."

*Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Applying these standards, the Court finds that some of Plaintiff's claims survive threshold review under § 1915A.

## **The Complaint**

Plaintiff sues medical providers at Lawrence (Dr. Coe, Dr. Martin, Dr. Garcia, and Dr. Ritz), the medical director (Dr. Shicker) for the Illinois Department of Corrections ("IDOC"), the regional medical director (Dr. Matticks) for Wexford Health Sources, Inc., ("Wexford"), and Wexford itself. (Doc. 1, pp. 6-7).

On September 19, 2013, Plaintiff sought medical attention from the Lawrence Health Care Unit for a large and painful keloid tumor on his left earlobe. (Doc. 1, p. 9). The nurse who saw him at that time told him to purchase Tylenol at the commissary to treat his pain.

On September 23, 2013, Plaintiff saw Dr. Coe for the first time. Dr. Coe diagnosed the tumor as a chondroma. Although Dr. Coe did not prescribe Plaintiff anything for the pain, he made a referral on September 24, 2013, for Plaintiff to have surgery to remove the tumor. (Doc. 1, p. 9). Through the "collegial review" process, however, Lawrence officials decided that the best approach would be to observe the tumor for six months to see if it grew, before considering surgery. (Doc. 1, pp. 7, 9).

On February 14, 2014, Dr. Coe measured the tumor again and noted that it had not grown in size. (Doc. 1, p. 10). In his opinion, surgery was not medically necessary because the condition had not changed, but he suggested that Plaintiff appeal the collegial review decision. (Doc. 1, pp. 10, 21).

On March 27, 2014, Dr. Coe found that the tumor had grown from 3.5 cm x 2.5 cm to 3.5cm x 3cm.[1] Based on that change, Dr. Coe recommended that it be evaluated for removal, because that procedure would be easier to do sooner than later. (Doc. 1, p. 10). Despite Dr. Coe's recommendation, the collegial review denied permission for Plaintiff to have the surgery. Dr. Coe made several referrals for surgery, but each was denied—on April 1 and November 10, 2014, and again on February 10, 2015. A stated reason for the denial was that the procedure was "cosmetic in nature." *Id.*

During this time, Plaintiff continued to suffer pain from the condition. He went to the nurse sick call on one occasion but "refused the medical services" because the nurse told him he

---

[1] Plaintiff notes that the tumor continued to grow, measuring 4 cm x 3.5 cm on November 5, 2014, and 4.5 cm x 3.5 cm on February 5, 2015. (Doc. 1, p. 10).

would have to pay $5.00 to get generic Tylenol. (Doc. 1, p. 11). Plaintiff had already purchased Tylenol on his own and found it to be ineffective to treat the pain. The pain persisted until Plaintiff was transferred to IRCC on April 24, 2015, where he obtained a different treatment. (Doc. 1, p. 11). At IRCC, "Wexford's medical staff" gave Plaintiff a steroid injection, which gave him "instant relief" because it softened the tumor tissue and reduced it in size. As a result, Plaintiff was able to sleep properly and no longer suffered pain from direct or indirect contact to the tumor. Nonetheless, he still wants to have the tumor removed.

Plaintiff alleges that he informed Dr. Coe of the severe pain and loss of sleep the tumor was causing him, but Dr. Coe wrote "false statements" in his medical records that minimized the level of Plaintiff's pain. (Doc. 1, p. 6). Plaintiff consistently requested surgery and filed a grievance on January 20, 2015, detailing the pain he was living with and its effects on his daily life. He was no longer able to engage in exercise because any motion of his body would trigger the pain, and as a consequence he was gaining weight. (Doc. 1, pp. 6, 47-48). He could not sleep well because if he turned onto his left side, the tumor would hurt so intensely that it would wake him up, and the continued pain would prevent him from falling back to sleep. *Id.*

Dr. Garcia and Dr. Ritz (physicians at Lawrence) were both directly involved in denying Dr. Coe's referrals requesting surgical removal of Plaintiff's tumor. (Doc. 1, p. 7). Plaintiff attaches several documents signed by either Garcia or Ritz recording the denial of surgical requests, dated October 1, 2013; April 8, 2014; and November 11, 2014. (Doc. 1, pp. 33, 35, 38). These documents note that the surgical evaluation would not be authorized based on "Conservative RX," and recommend continued observation and "conservative management." (Doc. 1, pp. 33, 35).

Dr. Martin was the Health Care Administrator at Lawrence. He was aware of Plaintiff's

request for surgery to remove the tumor because of the pain it was causing, based on an "offender request" Plaintiff submitted on June 30, 2013. (Doc. 1, p. 41). Plaintiff had directed the request to the warden, asking him to intervene to arrange for an outside provider to remove the tumor, because the "nurses office [sic]" had denied the treatment. According to Plaintiff, Dr. Martin "intercepted" this grievance/request. (Doc. 1, p. 6). Dr. Martin responded that Plaintiff should "follow medical procedures for your medical issues." (Doc. 1, p. 41). Plaintiff alleges that Dr. Martin failed to use his authority to see that Plaintiff's pain was properly treated. (Doc. 1, p. 6).

Dr. Shicker, the Medical Director for the IDOC, became informed of Plaintiff's condition when Plaintiff's mother wrote to him in November 2014. Dr. Shicker sent a general response to Plaintiff's mother to say that the prison medical providers were "following" Plaintiff's condition, and that "[w]hen there is a clinical need to excise a mass then the procedure is undertaken." (Doc. 1, p. 43). After learning of these comments, Plaintiff wrote directly to Dr. Shicker on January 9, 2015, informing him that he was in severe pain on a daily basis due to the tumor and the only pain relief he was given by Lawrence providers was Tylenol, which did not help. (Doc. 1, pp. 44-46). Plaintiff told Dr. Shicker that his daily activities are affected by the pain, which prevents him from sleeping and exercising. *Id.* Plaintiff asked Dr. Shicker to make sure that Lawrence providers approve surgery to remove the tumor.

Plaintiff alleges that Dr. Matticks, Wexford's Regional Medical Director, was responsible to set policy for the provision of health care in the IDOC. He claims that the policy set by Matticks regarding treatment of tumors caused the violation of Plaintiff's Eighth Amendment rights. (Doc. 1, p. 6).

Plaintiff seeks money damages as well as injunctive relief requiring Defendants to have

his tumor surgically removed and to continue his monthly injections to prevent the tumor from growing back. (Doc. 1, p. 16).

## Merits Review Pursuant to 28 U.S.C. § 1915A

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit. Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice.

**Count 1:** Eighth Amendment deliberate indifference claim against Dr. Coe, for failing to treat Plaintiff's severe pain caused by the tumor on his earlobe;

**Count 2:** Eighth Amendment deliberate indifference claim against Dr. Garcia and Dr. Ritz, for denying permission for Plaintiff to have surgery to remove the painful tumor;

**Count 3:** Eighth Amendment deliberate indifference claim against Dr. Martin and Dr. Shicker, for failing to take any steps to assist Plaintiff in getting treatment from Lawrence medical providers to relieve his pain;

**Count 4:** Eighth Amendment deliberate indifference claim against Dr. Matticks and Wexford Health Services, Inc., for setting the policy governing the treatment of tumors for prisoners in the IDOC, which resulted in the denial of Plaintiff's request and Dr. Coe's referral for surgical removal of the tumor.

Each of these counts shall proceed for further consideration, but Dr. Matticks shall be dismissed from the action.

## Deliberate Indifference to Serious Medical Needs

In order to state a claim for deliberate indifference to a serious medical need, an inmate must show that he (1) suffered from an objectively serious medical condition; and (2) that the

defendant was deliberately indifferent to a risk of serious harm from that condition. "A 'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gutierrez v. Peters*, 111 F.3d 1364, 1371 (7th Cir. 1997). An ailment that significantly affects an individual's daily activities or which involves chronic and substantial pain also satisfies the objective requirement. *Gutierrez*, 111 F.3d at 1373.

As to the subjective component, "[d]eliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk. Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted). *See also Farmer v. Brennan*, 511 U.S. 825, 842 (1994); *Perez v. Fenoglio*, 792 F.3d 768, 777-78 (7th Cir. 2015). However, the Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Further, a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).

Here, Plaintiff suffered from a tumor on his earlobe which caused significant pain and interfered with his normal daily activities by impairing his ability to sleep and engage in exercise. Plaintiff's primary treating physician at Lawrence, Dr. Coe, diagnosed the tumor and eventually recommended that it be surgically removed. Based on these facts, the Complaint satisfies the objective component of an Eighth Amendment claim. The remaining question is

7

whether the Defendants acted or failed to act with deliberate indifference to a known risk of serious harm to Plaintiff.

## Count 1 – Dr. Coe

Plaintiff claims that Dr. Coe was aware of the significant pain that he suffered on an ongoing basis as a result of the tumor. Dr. Coe made several referrals requesting approval for Plaintiff to have surgery, and that action does not demonstrate deliberate indifference to Plaintiff's need for treatment. Plaintiff asserts a deliberate indifference claim against Dr. Coe, however, based on his failure to take any other measures to relieve Plaintiff's pain. Tylenol was the only recommended treatment, and it did not give Plaintiff any pain relief. After Plaintiff was transferred to his present institution, he learned that an effective medication was available to treat the pain, when he received the steroid injection.

Plaintiff contrasts the treatment he received at IRCC with the Lawrence doctors' handling of his complaints. Notably, a difference of opinion between medical professionals regarding the appropriate treatment for an inmate's medical condition will not support a claim for deliberate indifference to a medical need. *See Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003) (courts will not take sides in disagreements with medical personnel's judgments or techniques). In this case, however, Plaintiff alleges that Dr. Coe essentially gave him no treatment at all for the pain, because the Tylenol did nothing to help him. Where a doctor persists in a course of treatment that he knows to be ineffective, those circumstances may state an Eighth Amendment claim. *See Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005) (doctor continued ineffective treatment, and refused to order endoscopy or specialist referral over a two-year period during which plaintiff suffered from ulcer); *Kelley v. McGinnis*, 899 F.2d 612, 616-17 (7th Cir. 1990) (inmate may prevail if he can prove that defendant "deliberately gave him a certain kind of

treatment knowing that it was ineffective" (citing *Estelle*, 429 U.S. at 104 n.10).

For these reasons, **Count 1** against Dr. Coe for deliberate indifference to Plaintiff's need for pain relief survives review under § 1915A and shall proceed.

### Count 2 – Dr. Garcia & Dr. Ritz

After Dr. Coe made the referrals for a surgical consultation for Plaintiff's tumor, Dr. Garcia and Dr. Ritz (apparently at different times) conducted a review of the surgical requests. Each time, they denied the request for Plaintiff to have surgery.

Plaintiff presumes that Dr. Garcia and Dr. Ritz were aware of his symptoms of pain, and the denial documents signed by these Defendants reflect that the tumor was growing. (Doc. 1, pp. 33, 35, 38). Dr. Coe's remarks on his surgical referrals informed Dr. Garcia and/or Dr. Ritz of several factors supporting his requests. The referral of March 27, 2014, states that surgery would be preferable "the sooner the better," noting that Plaintiff was not due to be released until 2027. (Doc. 1, p. 34). In another, dated April 1, 2014, Dr. Coe "propose[s] that [the tumor] be evaluated for removal now while still fairly small." (Doc. 1, p. 36). On November 5, 2014, Dr. Coe noted that surgery could probably be performed at Lawrence. (Doc. 1, p. 37). On February 5, 2015, Dr. Coe noted that Plaintiff's anticipated release date was 2025, and wrote, "Easier to take off now than later." (Doc. 1, p. 40). Nevertheless, Dr. Garcia and Dr. Ritz denied each request for surgical treatment, referring to the preference or policy for "conservative management." *Id.* Dr. Ritz also denied approval based on his opinion that the procedure was considered "cosmetic." (Doc. 1, pp. 25, 26).

This information supports Plaintiff's assertion that Dr. Garcia and Dr. Ritz were aware of the severity of his condition, yet denied Dr. Coe's requests for Plaintiff to have the tumor surgically removed. According to the Complaint, Plaintiff continued to suffer pain and

impairment of his normal activities while he waited in vain for the surgical request to be approved. At this stage, Plaintiff has sufficiently stated a deliberate indifference claim against Dr. Garcia and Dr. Ritz, and **Count 2** may also proceed for further review.

### Count 3 – Dr. Martin & Dr. Shicker

Plaintiff shows that Dr. Martin was aware of his condition, based on Dr. Martin's receipt of Plaintiff's June 30, 2014, "offender request" that Plaintiff submitted to the warden. (Doc. 1, p. 41). Plaintiff wrote that the tumor consistently causes him pain, and that treatment had been denied. He asked the warden to intervene so that he could be sent to an outside hospital for the tumor to be removed. Dr. Martin's only response was to tell Plaintiff to "follow medical procedures." *Id.* If Dr. Martin had made any inquiry into Plaintiff's medical records, he could have seen that Plaintiff had already gone through "procedures" and his request for surgery had been denied twice. (Doc. 1, pp. 33, 35).

Turning to Dr. Shicker, he learned about Plaintiff's condition initially through correspondence from Plaintiff's mother in November 2014, which was followed by Plaintiff's detailed letter in January 2015. Plaintiff explained the extent of his pain from the tumor and the serious effects it had on his health (inability to sleep or exercise), and requested help to get approval for surgery.

In order to sustain a deliberate indifference claim against either of these administrators, Plaintiff must show that the Defendant was informed of his serious medical condition and of his contention that prison medical providers had denied necessary treatment for the painful tumor. If a Defendant had such knowledge, but failed to take any action to remedy the alleged failure to address Plaintiff's medical issues, the Defendant may have been deliberately indifferent to Plaintiff's medical needs. *See Perez v. Fenoglio*, 792 F.3d 768, 782 (7th Cir. 2015) (prisoner

could proceed with deliberate indifference claim against non-medical prison officials who failed to intervene despite their knowledge of his serious medical condition and inadequate medical care, as explained in his "coherent and highly detailed grievances and other correspondences"); *Vance v. Peters*, 97 F.3d 993 (7th Cir. 1995) ("a prison official's knowledge of prison conditions learned from an inmate's communications can, under some circumstances, constitute sufficient knowledge of the conditions to require the officer to exercise his or her authority and to take the needed action to investigate and, if necessary, to rectify the offending condition.").

Plaintiff's correspondence received by Dr. Martin and by Dr. Shicker arguably placed both of these individuals on notice that Plaintiff was suffering ongoing pain from the tumor, and that Lawrence medical officials were not providing him with treatment to relieve his condition. It appears that neither Dr. Martin nor Dr. Shicker took any action to investigate the situation or to prompt the Lawrence medical providers to re-evaluate Plaintiff's need for treatment. At this stage, therefore, Plaintiff may proceed with his deliberate indifference claim in **Count 3** against Dr. Martin and Dr. Shicker.

## Count 4 – Dr. Matticks & Wexford Health Services, Inc.

Defendant Wexford Health Services, Inc., ("Wexford") is a corporation that employs the prison medical provider Defendants (Dr. Coe, Dr. Garcia, Dr. Ritz) and provides medical care at the prison, but it cannot be held liable solely on that basis. A corporation can be held liable for deliberate indifference only if it had a policy or practice that caused the alleged violation of a constitutional right. *Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). *See also Jackson v. Ill. Medi-Car, Inc.,* 300 F.3d 760, 766 n.6 (7th Cir. 2002) (private corporation is treated as though it were a municipal entity in a § 1983 action).

Based on the facts outlined under Count 2, it appears that Dr. Garcia and Dr. Ritz denied

permission for Plaintiff to have the tumor surgically removed based on the "conservative management" policy/practice directed by Wexford, and/or because of a policy or practice that classified this type of surgery as "cosmetic." Plaintiff alleges that Wexford's policy for the treatment of tumors was the reason his surgery was not approved. (Doc. 1, p. 6). At this stage of the case, this connection is sufficient to support a deliberate indifference claim against Wexford which may proceed under **Count 4**.

Dr. Matticks is a Regional Medical Director for Wexford, and Plaintiff alleges that he is responsible for promulgating the policy that governs medical treatment for IDOC inmates by Wexford employees, which guided their handling of Plaintiff's referrals for surgery. Whether or not Dr. Matticks was the author of a Wexford policy that caused Plaintiff's proposed surgery to be denied is immaterial to the question of Wexford's corporate liability. For Wexford to be liable, it must be shown that a Wexford policy or practice caused the violation of Plaintiff's rights; it does not matter which individual developed the policy.

Dr. Matticks may be held individually liable for deliberate indifference only if he was personally aware of Plaintiff's medical condition and the risk to his health, and then acted or failed to act in disregard to that risk of harm. *See Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012). The Complaint and exhibits do not describe or include any communication from Plaintiff to Dr. Matticks, and do not otherwise indicate any personal involvement by Dr. Matticks in the decisions regarding Plaintiff's medical treatment (or non-treatment). Accordingly, Dr. Matticks shall be dismissed from **Count 4** and from the action without prejudice.

### Pending Motion

Plaintiff's motion for recruitment of counsel (Doc. 3) shall be referred to United States Magistrate Judge Wilkerson for further consideration.

**Disposition**

**MATTICKS** is **DISMISSED** from this action without prejudice.

The Clerk of Court shall prepare for **SHICKER, COE, MARTIN, WEXFORD HEALTH SERVICES, INC., GARCIA,** and **RITZ**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge

Wilkerson for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  October 3, 2017**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**