UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| DARRELL WARREN, | ) |  |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | Cause No. 3:17-cv-0917-GCS |
| JOHN COE, HECTOR GARCIA, PHIL MARTIN, STEPHEN RITZ, and WEXFORD HEATLH SOURCES, INC., | ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM and ORDER

**SISON, Magistrate Judge:**

### INTRODUCTION AND BACKGROUND

Pending before the Court are motions for summary judgment filed by Defendants (Doc. 127, 129). Plaintiff Darrell Warren, through appointed counsel, opposes the motions (Doc. 136, 137).[1] Based on the record, the applicable law and the following, the Court **GRANTS** the motions.

Warren's original complaint, as narrowed by the Court's threshold order (Doc. 8), contains the following claims:

> **Count 1 –** Eighth Amendment deliberate indifference claim against Dr. Coe for failing to treat Warren's severe pain caused by a tumor on his earlobe;

---

1   On August 30, 2018, the Court appointed attorney Michael J. McGowan to represent Warren (Doc. 83).

> **Count 2 –** Eighth Amendment deliberate indifference claim against Dr. Garcia and Dr. Ritz for denying permission for Warren to have surgery to remove the painful tumor;
>
> **Count 3** - Eighth Amendment deliberate indifference claim against Dr. Martin and Dr. Shicker for failing to take any steps to assist Warren in getting treatment from Lawrence medical providers to relieve his pain;
>
> **Count 4** - Eighth Amendment deliberate indifference claim against Wexford Health Sources, Inc., for setting the policy governing the treatment of tumors for prisoners in the IDOC, which resulted in the denial of Warren's request and Dr. Coe's referral for surgical removal of the tumor.

(Doc. 8, p. 6).

The allegations contained in the complaint took place from September 19, 2013 to April 24, 2015 and occurred at Lawrence Correctional Center ("Lawrence"). On April 24, 2015, Warren was transferred to Illinois River Correctional Center ("Illinois River"). Warren alleges that he was prescribed steroidal injections as a course of treatment at Illinois River that provided him relief (Doc. 1, p. 11; Doc. 95-1, p. 6). On June 21, 2018, District Judge Nancy J. Rosenstengel adopted a Report and Recommendation granting summary judgment regarding exhaustion of administrative remedies as to Defendant Shicker and denying summary judgment regarding exhaustion of administrative remedies as to Defendants Garcia, Ritz, Wexford and Martin (Doc. 59).

## FACTS[2]

The following facts are taken from the record and presented in the light most favorable to Warren, the non-moving party, and all reasonable inferences are drawn in

---

2   These facts are not disputed by the parties, unless noted.

his favor. *See Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

At all relevant times, Warren was incarcerated at Lawrence. Defendant Dr. John Coe was a physician at Lawrence. Defendant Dr. Hector Garcia worked for Wexford Health Sources, Inc. ("Wexford") as its National Medical Director. Defendant Dr. Stephen Ritz was the Corporate Medical Director of Utilization Management for Wexford. Defendant Phil Martin was the Health Care Unit Administrator at Lawrence. Defendant Wexford is a private corporation that has a contract with the Illinois Department of Corrections ("IDOC") to provide certain healthcare services to inmates housed in IDOC facilities. Drs. Coe, Garcia and Ritz all participated in collegial reviews of Warren's tumor on his left earlobe.

Prior to his incarceration, Warren saw Dr. Lisa Peters, a board-certified plastic surgeon, who diagnosed a symptomatic keloid on Warren's left earlobe. Symptomatic keloids are those that exhibit growth, pain or itchiness. The diagnosis was confirmed by a biopsy of the excised keloid. A keloid is a type of an abnormal scar growth that may occur after a surgical procedure or injury. Warren denied ever having any trauma in the area of the growth on his earlobe.

On September 19, 2013, Warren complained about the growth on his left ear stating it was sensitive to touch and itchy. Based on this, Warren was scheduled to see Dr. Coe.

Warren first saw Dr. Coe on September 23, 2013 and complained about the growing keloid on his left earlobe. Warren told Dr. Coe that the keloid was painful, and

he was having trouble sleeping. Dr. Coe noted that the tumor on the earlobe was rubbery and could be chondroma, which is a "growth of cartilage."

On September 24, 2013, Dr. Coe and Dr. Garcia discussed Warren's referral in collegial review. Dr. Coe made a notation that the tumor was to be observed and rescheduled in about six months. Dr. Coe and Dr. Garcia agreed to a plan to measure the keloid and continue observation. The medical records noted that Warren was placed on the doctor call line for February 14, 2014 for follow-up with the left earlobe.

Dr. Coe saw Warren on October 25, 2013 and noted that the size of the tumor had not changed. Dr. Coe noted that surgery was not medically necessary.

On March 27, 2014, Dr. Coe saw Warren and examined him. Dr. Coe suggested a collegial review and noted that the size of the tumor/keloid had increased. In collegial review on April 1, 2014, Dr. Coe and Dr. Garcia discussed Warren's case and denied the removal of the tumor. Dr. Coe noted: "collegial review: He is not approved for removal of the purported chondroma. The tumor is best left alone."

On June 21, 2013, in response to an offender request, Martin wrote: "[m]edical determinations are made by the medical director. Follow medical procedures for your medical issues."

On July 11, 2014, Martin noted in the medical records referring to a grievance by Warren: "ear pain elevation and discussion and collegial review and not knowing the

outcome." Martin also referred Warren to the medical doctor.[3]

Warren saw Dr. Coe on November 5, 2014, and the measurement of the tumor/keloid was slightly larger. The medical record notes that Warren is doing well and that he wants the keloid "off." Dr. Coe requested another collegial review.

On November 10, 2014, per Warren's medical records, Dr. Coe noted: "collegial review: He is not approved for surgery at this time but is to be measured again in 3 months. Dr. Ritz's opinion is that it is still cosmetic but will consider when this changes."

On January 22, 2015, Dr. Coe did a medical chart review and noted that Warren had an appointment to have the chondroma re-measured and then to be presented to collegial review.

On February 13, 2015, Martin prepared a memorandum regarding Warren indicating: "Offender has been seen by the M.D. and is scheduled in February 2015 to reassess his ear for growth of the keloid/tumor by the M.D. Once the M.D. reassesses this, then he will medically determine the plan of care."

Warren's case was presented in collegial review in February 2015, and again surgery was denied on the basis that removal was cosmetic.

On March 18, 2015, Martin wrote a note in the chart again referring Warren to the doctor for follow-up. Dr. Coe saw Warren on March 23, 2015 and measured the tumor.

Warren was transferred from Lawrence to Illinois River on April 29, 2015.

---

3    Defendant Martin is not a doctor and does not provide actual treatment to patients.

From March 2014 to February 2015, Dr. Coe measured the keloid each time he saw Warren. During this period, the keloid grew from 3.5 cm by 2.5 cm to 4.5 cm by 3.5 cm.

The criteria to diagnose a growth as a keloid includes a history of trauma or an injury to area of the growth. Removal of chondroma is a cosmetic procedure unless there is a diagnostic purpose for removal. Removal of a keloid is a cosmetic procedure if the keloid is not symptomatic.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See Archdiocese of Milwaukee v. Doe*, 743 F.3d 1101, 1105 (7th Cir. 2014)(citing FED. R. CIV. PROC. 56(a)). *Accord Anderson v. Donahoe*, 699 F.3d 989, 994 (7th Cir. 2012). A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). *Accord Bunn v. Khoury Enterpr., Inc.*, 753 F.3d 676, 681-682 (7th Cir. 2014).

In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *See Anderson*, 699 F.3d at 994; *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011). As the Seventh Circuit has explained, as required by Rule 56(a), "we set forth the facts by

examining the evidence in the light reasonably most favorable to the non-moving party, giving [him] the benefit of reasonable, favorable inferences and resolving conflicts in the evidence in [his] favor." *Spaine v. Community Contacts, Inc.*, 756 F.3d 542, 544 (7th Cir. 2014). The Court's role at summary judgment is not to evaluate the weight of evidence, to judge witness credibility, or to determine the truth of the matter. Instead, the Court is to determine whether a genuine issue of fact exists. *See Nat'l Athletic Sportwear Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008).

The Supreme Court has recognized that deliberate indifference to the serious medical needs of prisoners may constitute cruel and unusual punishment under the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To prevail on a claim for deliberate indifference to a serious medical need, there are "two high hurdles, which every inmate-plaintiff must clear." *Dunigan ex rel. Nyman v. Winnebago Cnty.*, 165 F.3d 587, 590 (7th Cir. 1999). First, the plaintiff must demonstrate he suffered from an objectively serious medical condition. *Id.* at 591-592. Second, the plaintiff must establish the individual prison officials were deliberately indifferent to that condition. *Id.*

The first consideration is whether the prisoner has an "objectively serious medical condition." *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). "A medical condition is objectively serious if a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014)(citations omitted). It is not necessary for such a medical condition to "be life-

threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). *Accord Farmer v. Brennan*, 511 U.S. 825, 828 (1994)(violating the Eighth Amendment requires "deliberate indifference to a *substantial* risk of *serious* harm")(internal quotation marks omitted)(emphasis added)).

To show prison officials acted with deliberate indifference, a plaintiff must put forth evidence that prison officials not only knew that the prisoner's medical condition posed a serious health risk, but they consciously disregarded that risk. *See Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012). "This subjective standard requires more than negligence and it approaches intentional wrongdoing." *Id. Accord Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010)(stating that "[d]eliberate indifference is intentional or reckless conduct, not mere negligence."); *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010)(stating that "negligence, even gross negligence does not violate the Constitution.").

Assessing the subjective prong is more difficult in cases alleging inadequate health care as opposed to lack of care. Without more, a "mistake in professional judgment cannot be deliberate indifference." *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016). The Seventh Circuit explained:

> By definition a treatment decision that is based on professional judgment cannot evince deliberate indifference because professional judgment implies a choice of what the defendant believed to be the best course of treatment. A doctor who claims to have exercised professional judgment is effectively

Page **8** of **15**

asserting that he lacked a sufficiently culpable mental state, and if no reasonable jury could discredit that claim, the doctor is entitled to summary judgment.

*Id*. (citing *Zaya v. Sood*, 836 F.3d 800, 805-806 (7th Cir. 2016)).

This is in contrast to a case "where evidence exists that the defendant [ ] knew better than to make the medical decision[] that [he] did." *Whiting*, 839 F.3d at 662 (quoting *Petties v. Carter*, 836 F.3d 722, 731 (7th Cir. 2016)(alterations in the original). A medical professional's choice of an easier, less efficacious treatment can rise to the level of violating the Eighth Amendment, however, where the treatment is known to be ineffective but is chosen anyway. *See Berry*, 604 F.3d at 441. The Eighth Amendment does not require that prisoners receive "'unqualified access to health care.' Rather, they are entitled only to "'adequate medical care.'" *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006)(citations omitted).

Defendants moved for summary judgment arguing that Warren does not suffer from a serious medical need and they were not deliberately indifferent to Warren's serious medical needs. Warren opposes the motions. As the motions are ripe, the Court turns to address the merits of the motions.

ANALYSIS

I. **Medical Provider Defendants**

   A. **Serious Medical Need**

Warren argues that his keloids constitute an objectively serious medical condition because the evidence shows that his keloid caused and continues to cause significant pain

and discomfort.[4] Warren argues that he reported these symptoms to Dr. Coe during his medical visits. Furthermore, Warren argues that the pain negatively affected his daily activities including his ability to exercise, to wear hats so as to keep warm during cold weather, to get dressed, to shower and to sleep.

In *Wheeler*, a plaintiff brought a similar Eighth Amendment deliberate indifference claim seeking to have his keloids surgically removed. *See Wheeler v. Talbot*, No. 15-3325, 695 Fed. Appx. 151 (7th Cir. June 5, 2017). Specifically, the plaintiff complained his keloids caused him itching, oozing, tenderness and pain. *Id.* at 154. The Seventh Circuit found that, although the plaintiff alleged that the keloids bled and oozed at times, the medical director's examinations showed no signs of infection, oozing, bleeding, or trauma, which reasonably suggested that the keloids were cosmetic problems only. *Id.* The Seventh Circuit reasoned that because the examinations suggested that the keloids "were cosmetic problems only, [the plaintiff] could not persuade a rational jury that surgery was medically advisable, let alone that a serious condition had been ignored." *Id.*

*Wheeler* demonstrates that, although the occasional bleeding and oozing of scar tissue could be "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment[,]" *see Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir.

---

4     For the purposes of deciding this motion, the Court considers the tumor on Warren's left earlobe to be a keloid, which can be more serious if symptomatic, as opposed to a chondroma, which is cosmetic in nature.

1997) (quotations and citations omitted), it is not sufficient to indicate an objectively serious medical condition. *See Wheeler*, 695 Fed. Appx. at 154.

Warren's allegations all fit within the circumstances *Gutierrez* outlines as possibly showing an objectively serious medical condition. However, these circumstances are only factors for the Court to consider. The Seventh Circuit has also adopted the standard that "a medical condition [is] 'serious' where the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Gutierrez*, 111 F.3d at 1373.

The objective findings in Warren's medical records do not establish that Warren's keloid constitutes a serious medical condition. The medical records indicate that there was no sign of infection, no sign of bleeding, and there was no loss of skin integrity. The undisputed record reflects that Warren's growth on his ear was discussed in collegial review four times, and each time it was determined that the surgical removal of the keloid was a cosmetic procedure that was not medically necessary in the clinical judgment of all the physicians. While Warren stated that pain from the keloid affected aspects of his daily life, Warren's own testimony revealed that he was still able to maintain various daily activities such as playing basketball and working at Illinois River. Even though Warren has been impacted by the keloid, no rational jury would find that the failure to remove the keloid through surgery "could result in further significant injury or the unnecessary and wanton infliction of pain." *Gutierrez*, 111 F.3d at 1373. Given all the facts before the

Court, there is insufficient evidence to establish that Warren suffered from an objectively serious medical condition. However, out of an abundance of caution, the Court will consider whether the Medical Provider Defendants acted with deliberate indifference to Warren's alleged medical needs.

B.     **Deliberate Indifference**

Construing the evidence in the light most favorable to Warren, the Court finds that he has not established that Drs. Coe, Garcia or Ritz were deliberately indifferent to his medical needs regarding the tumor/keloid on his left earlobe. The record reveals that from September 2013 to early 2015 Dr. Coe provided appropriate medical treatment to Warren. Dr. Coe routinely saw, examined, and prescribed acetaminophen and referred Warren's left earlobe for collegial review four times. Obviously, the treatment was not the treatment Warren wanted or demanded. However, mere disagreement or dissatisfaction as to the treatment received does not amount to deliberate indifference. *See Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007); *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997); *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003); *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996). There is no evidence that the referral denials by these three medical providers were such a substantial departure from accepted professional judgment, or so plainly inappropriate, as to permit the inference they intentionally or recklessly disregarded Warren's serious medical needs. Rather, these doctors exercised

their professional judgment and recommended a more conservative course of treatment for the symptoms associated with Warren's keloid

Warren's claim against Wexford likewise meets the same fate. Wexford is a private corporation, but the Seventh Circuit held that the *Monell* theory of municipal liability applies in § 1983 claims brought against private companies that act under color of state law. *See, e.g., Shields v. Ill. Dept. of Corr.*, 746 F.3d 782 (7th Cir. 2014)(noting that every circuit court that has addressed the issue has extended the *Monell* standard to private corporations acting under color of state law). To prevail on his *Monell* claim, Warren needs to show that Wexford's policy, practice, or custom, caused a constitutional violation. *See Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2009). However, as previously discussed, there is no evidence of underlying deliberate indifference for the treatment of Warren's keloid. Without any evidence of deliberate indifference in Warren's treatment, Wexford cannot be held liable for damages on Warren's *Monell* claim. *See Pyles*, 771 F.3d at 411 (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S. Ct. 1571 (1986)).

Furthermore, there is no evidence of any policies which resulted in the denial of Warren's request for surgery. Here, the doctors found the keloid cosmetic and not symptomatic after examination, a finding made every time at collegial review. Additionally, there is no evidence that Wexford had an unconstitutional policy which prevented surgery for keloids where surgery was medically necessary nor is there

evidence that Warren's keloid required surgical intervention.

## II. Defendant Phil Martin

Prison officials, who are non-medical professionals, are entitled to rely upon the judgment of medical professionals to avoid liability under the Eighth Amendment. *See Lee v. Young*, 533 F.3d 505, 511 (7th Cir. 2008). For example, the Seventh Circuit found that "as a layperson, the warden could rely on the medical staff's expertise as long as he did not ignore [an inmate] or his mistreatment." *Diggs v. Ghosh*, 850 F.3d 905, 911 (7th Cir. 2017).

Martin contends he cannot be liable because he was not directly involved in Warren's care. Warren counters that there exist disputed issues of material fact as to whether Martin violated his constitutional rights. The Court, however, agrees with Martin.

The undersigned finds that Warren has not established that Martin was deliberately indifferent to the keloid on his left earlobe. Warren was seen regularly in the healthcare unit. The record reflects that Martin responded to a request slip on June 21, 2013 and wrote a note in Warren's medical records on July 11, 2014 following up on a grievance. Martin also prepared a memorandum stating that Warren had been seen by the doctor and was scheduled to see the doctor again in February 2015 to assess the growth of the keloid on his left earlobe.

The Eighth Amendment does not require that prisoners receive "unqualified access to health care[.]" Rather, they are entitled only to "adequate medical care." *Johnson*, 433 F.3d at 1013. The record reflects that Martin investigated the medical issues Warren was complaining of and provided Warren with responses and memorandums on how he was to proceed. Martin was entitled to rely on the advice and treatment rendered by the medical professionals. Accordingly, no reasonable jury could find that there is evidence that Martin was deliberately indifferent to Warren's medical needs. Nor could any reasonable jury find that Martin ignored Warren's medical concerns.

## Conclusion

Accordingly, the Court **GRANTS** Defendants' motions for summary judgment (Doc. 127, 129). The Court finds in favor of John Coe, Phil Martin, Hector Garcia, Stephen Rice, and Wexford Health Sources, Inc., and against Darrell Warren. Further, the Court **DIRECTS** the Clerk of the Court to enter judgment reflecting the same and close the case. Warren shall take nothing from this case.

**IT IS SO ORDERED.**

**Dated: April 8, 2020.**

Digitally signed by Judge Sison
Date: 2020.04.08 15:57:51 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**